UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____           :
                                       :
ROBERT N. SHAVER, III,                 :
                                       :        Civil Action
             Plaintiff,                :        No. 09-cv-3280 (NLH)(JS)
                                       :
       v.                              :        OPINION
                                       :
CFG HEALTHCARE, GARY MERLINE,          :
L. DAVENPORT, THOMAS, ATLANTIC         :
COUNTY JAIL STAFF, et al.,             :
                                       :
             Defendants.               :
_____           :
```

**APPEARANCES**:

Robert N. Shaver, III
# 100100C
Northern State Prison
168 Frontage Road
P.O. Box 2300
Newark, N.J. 07114
*Pro se*

Thomas J. Decker, Esquire
Decker & Magaw, Esqs.
507 Westfield Avenue
Westfield, N.J. 07090
*Attorney for Defendants CFG Health Systems, L.L.C. and Luanne Davenport*

James T. Dugan, Esquire
Atlantic County Department of Law
1333 Atlantic Avenue
8th Floor
Atlantic City, N.J. 08401
*Attorney for Defendants Gary Merline and Sean Thomas*

**HILLMAN, District Judge**

      Plaintiff, Robert N. Shaver, III, a *pro se* inmate, brings

suit against Defendants, CFG Health Systems, L.L.C. (or, "CFG"),

the medical provider for the Atlantic County Justice Facility

(or, "ACJF"), Luanne Davenport, a CFG nurse, and Gary Merline and Sean Thomas, former wardens of the ACJF (collectively, "Defendants").  Shaver alleges defendants violated the Eighth Amendment to the United States Constitution when he contracted certain diseases, including tuberculosis (or, "TB"), while an inmate at the ACJF.  In particular, Shaver alleges that his infections resulted from the unsanitary conditions and design of the prison and that prison officials and medical providers refused to provide him with necessary medical treatment.  In response to Shaver's claims, Defendants move for summary judgment.

    For the reasons expressed below, Defendants' motions for summary judgment are granted.

**I.   JURISDICTION**

    Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983.  This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331.

**II.  BACKGROUND**

    At the time of his allegations, Robert N. Shaver, III, was an inmate in the Atlantic County Justice Facility in the State of New Jersey.[1]  During his incarceration at the prison, Shaver had

_____

    [1] Shaver is now incarcerated in Northern State Prison in Newark, New Jersey.

been placed in overcrowded facilities with other inmates.[2]  Due to the congestion and unhealthy conditions of the prison, including the uncleaned ventilation system, Shaver purportedly contracted latent TB and Methicillin Resistant Staphylococcus Aureus ("MRSA").

Nurse Luanne Davenport conducted a skin test on Shaver and discovered a lump, seven millimeters in size, on Shaver's arm. Drawing from the examination, Davenport informed Shaver that he tested positive for having come into contact with tuberculosis. After relaying this information to Shaver, Davenport threw him out of her office and refused to provide him with any treatment or medication for latent TB.  However, Davenport scheduled Shaver for an X-ray.  Shaver submitted to an X-ray examination, for which he tested negative.

In or around July 2009, Shaver filed suit in this Court against Defendants, alleging violations to his Eighth Amendment rights.  In particular, Shaver alleges that Defendants failed to protect his health and provide him with necessary medical treatment for TB.  Additionally, Shaver avers that the medical staff did not inform him that he had MRSA.  Shaver attributes his infections to the correctional facility's overcrowded prison

---

[2] As set forth below, in applying the summary judgment standard, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

population, unsanitary conditions, and faulty structural design.

In or around January 2011, CFG and Nurse Davenport (collectively, "Healthcare Defendants") moved for summary judgment against Shaver's claims. Soon thereafter, Gary Merline and Sean Thomas, former wardens of ACJF (collectively, "Warden Defendants"), also moved for summary judgment.

**III.** **DISCUSSION**

    **A.**    **Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and

4

all justifiable inferences are to be drawn in his favor."  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**B.   CFG Health Systems and Nurse Davenport**

CFG asserts its entitlement to summary judgment against Shaver's claims on the grounds that CFG cannot be held vicariously liable under 42 U.S.C. § 1983 for its employee's misconduct and Shaver does not identify any CFG policy or custom that would cause a constitutional violation.  For her part, Nurse Davenport argues that Shaver presents no evidence to demonstrate that she acted with deliberate indifference to a serious medical need.  Rather, Davenport posits that Shaver did not have latent

TB and that, even if he had, no medical treatment was necessary.

Shaver disputes Healthcare Defendants' arguments and reiterates that the reading of seven millimeters constitutes a positive reading for TB.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must show that: (1) the conduct challenged was committed by a person acting under color of state law; and (2) that the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.

Germane to the present matter, the Eighth Amendment

6

prohibits "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To state a claim for violation of this Eighth Amendment right, a prisoner must demonstrate that: (1) his medical needs are serious; and (2) the defendants showed deliberate indifference to those needs. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835-38 (1994); Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); Rouse, 182 F.3d at 197 (noting that deliberate indifference requires "recklessness or a conscious disregard of a serious risk"). "[M]ere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most the physician may have committed medical malpractice but not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

According to Defendants, Shaver was a pretrial detainee at the time of his purported constitutional injuries. For a

pretrial detainee, the deprivation of medical care is subject to analysis under the Due Process Clause of the Fourteenth Amendment, and not the Eighth Amendment.  "Courts, however, have understood that, for purposes of evaluating deliberate indifference under the Fourteenth Amendment, the United States Court of Appeals for the Third Circuit applies the same standard that pertains to deliberate indifference claims brought under the Eighth Amendment[.]"  Pittman v. County of Union, 2008 U.S. Dist. LEXIS 28068, at *17 (D.N.J. Apr. 1, 2008); see also Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005); Woloszyn v. County of Lawrence, 396 F.3d 314 (3d Cir. 2005).  Bearing this in mind, the Court addresses Healthcare Defendants' motion.

First, the Court agrees with CFG that it cannot be held liable under Section 1983 merely on the basis of its employee's actions.  In other words, the theory of *respondeat superior* cannot impute liability upon CFG for actions it did not specifically commit, command, or approve.  See Rode, 845 F.2d at 1207.  Moreover, Shaver points to no evidence that CFG had any policy or custom that in any way endorsed, promoted, or caused a deprivation of medical care.  See Pittman, 2008 U.S. Dist. LEXIS 28068, at *19 (granting summary judgment against plaintiff's Section 1983 claim against prison's medical provider because plaintiff "failed to adduce any evidence of a policy or custom enacted by [the medical provider] that amounted to deliberate

8

indifference to [decedent's] serious medical needs").  Nor does
the record show that CFG had any knowledge of or involvement in
Nurse Davenport's purported refusal to furnish medical care.[3]
Therefore, for Shaver's claim against CFG, summary judgment is
granted in CFG's favor.

Second, Shaver's claim against Nurse Davenport is predicated
upon a skin test conducted on Shaver that examined a lump on his
arm, seven millimeters in size.  According to Shaver, that
reading is evidence he contracted latent TB.  Upon learning of
the latent TB, Shaver submits, Nurse Davenport refused to provide
any medical treatment and dismissed Shaver from her office.

In defense to Shaver's representations, Davenport furnishes
the certification of James J. Neal, M.D., a licensed physician
and CFG's medical director.  Neal attests that, under normal
circumstances, a test result of seven millimeters is a negative
result, and that a test result of ten millimeters or more would
illustrate latent TB.  Based on Davenport's evidence, it would
appear that under the circumstances of this case, Shaver's test
result of seven millimeters did not clearly demonstrate latent

---

[3] To this point, when asked during his deposition if he were
suing CFG simply because that entity employs Nurse Davenport,
Shaver replied, "Yes."  (Healthcare Def. Mot., Exh. B, at 31).
He subsequently added, "Well, as the employer of Mrs. Davenport,
and she's employed by them, I believe that makes everybody
equally responsible to the case."  (Id. at 33).  Shaver could not
recall any other wrongdoing perpetrated by CFG.

TB.[4]   Furthermore, according to two TB tests administered at
Northern State Prison in or around July 2009 and September 2010,
respectively, Shaver had readings of zero millimeters.
(Healthcare Def. Mot., Exh. C).

In response to Davenport's motion and submission, Shaver
simply reiterates that a test result of seven millimeters
constitutes a positive reading.  However, other than his own
opinion, Shaver proffers no evidence to support his assertion or
rebut Defendants' motions.[5]  Without some evidence, such as
expert testimony, Shaver cannot disprove Neal's medical opinion
or -- more importantly, and notwithstanding Defendants' arguments
and evidence -- carry his own burden to show that he had a
serious medical need that went untreated.  Absent some tangible
evidence, a reasonable fact-finder cannot conclude that a seven-
millimeter bump on Shaver's arm must have been TB for which he
was entitled to medical care.  At this stage of litigation,
Shaver has not provided the evidence necessary to prove his claim
against Davenport.  See Celotex, 477 U.S. at 331 (explaining that
when "the nonmoving party's evidence is insufficient to establish

---

[4] Former wardens, Gary Merline and Sean Thomas, rely on
Healthcare Defendants' arguments with respect to any claims
involving Shaver's alleged TB infection and lack of treatment.

[5] During his deposition, Shaver testified that he received
information about TB from the internet and that he would rely on
that information and his personal knowledge.  However, he did not
identify any particular documents or sources of information
during his deposition.

an essential element of the nonmoving party's claim . . . a trial would be useless and the moving party is entitled to summary judgment as a matter of law"). Further, Neal states that for latent TB, no medical treatment is necessary. If true, then Nurse Davenport, it appears, could not have acted with deliberate indifference by depriving Shaver of medical treatment for a serious medical need -- for the treatment she denied was unnecessary. Davenport's actions and motives notwithstanding, Shaver, who claims to know of a medication that could help his putative condition, cites no authority to show that any treatment was available or necessary for latent TB. In the end, Shaver simply fails to proffer sufficient evidence to establish his claims and to withstand summary judgment.[6]

Therefore, for the reasons stated above, Healthcare Defendants' Motion for Summary Judgment is granted against Shaver's claims.[7]

---

[6] Shaver testified at his deposition that CFG and Nurse Davenport treated him properly for MRSA and that he has no complaint against them relating to MRSA. Later in his deposition, however, Shaver mentioned that he had not been adequately informed of his MRSA condition. To whatever extent Shaver alleges a claim against Healthcare Defendants for their failure to diagnose MRSA, that claim must fail. Shaver proffers no evidence to show that their actions were improper or constituted deliberate indifference.

[7] To the extent that Shaver advances the same claims against Gary Merline and Sean Thomas, summary judgment is granted against those claims as well, for the same reasons expressed above and as explained *infra*.

C.    **Former Wardens Gary Merline and Sean Thomas**

Former wardens of the Atlantic County Justice Facility, Gary Merline and Sean Thomas, present several arguments in favor of granting summary judgment against Shaver's claims, including the lack of any genuine issue of material fact and the applicability of qualified immunity.  However, as a threshold issue, Warden Defendants assert that Shaver did not exhaust his administrative remedies within the prison system prior to filing the current suit.  Shaver says he has.

"Under the Prisoner Litigation Reform Act [or, "PLRA"], a prisoner must exhaust available administrative remedies before bringing suit concerning prison conditions." Daniels v. Rosenberger, 386 F. App'x 27, 29 (3d Cir. 2010) (citing 42 U.S.C. § 1997e(a)).  "Whether an administrative remedy is available to the prisoner is a matter of law," with the relevant inquiry being whether the remedy was "'capable of use; at hand.'" Id. (quoting Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002)).  "Proper exhaustion of administrative remedies requires filing a timely or otherwise procedurally non-defective grievance." Id.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  "The burden of proving exhaustion of administrative remedies is

12

on the [defendant-prison officials]." <u>Cerome v. Moshannon Valley</u>
<u>Corr. Center</u>, 2010 U.S. App. LEXIS 24938, at *10 (3d Cir. Dec. 7,
2010).

At the time of Defendants' alleged misconduct, Shaver was an
inmate incarcerated at the ACJF and thus was subject to whatever
policies and procedures were in place in that prison.  According
to Warden Defendants, the Gerard L. Gormley Justice Facility
Inmate Handbook, which Shaver had been assigned, sets forth a
grievance procedure that ACJF inmates must utilize before they
may pursue their claims in court.  In support of their defense,
Warden Defendants provide a copy of the Inmate Handbook and cite
to <u>Concepcion v. Morton</u>, 306 F.3d 1347 (3d Cir. 2002), in which
the Third Circuit Court of Appeals held that a prison grievance
procedure outlined in a New Jersey Department of Corrections'
inmate handbook constituted an "administrative remedy" within the
scope of 42 U.S.C. § 1997e(a).

Indeed, the Inmate Handbook at issue in this case appears to
articulate an administrative remedies procedure as contemplated
by the PLRA.  Pursuant to Section Two, B, of the Inmate Handbook:

> A grievance procedure has been established to
> protect both inmates and staff regarding
> issues in the facility.
>
> All grievances are to be first handled
> informally through the chain of command (i.e.,
> Counselor or Officer, Sergeant,
> Lieutenant/Shift Commander) via an inmate
> request form.  After all attempts to handle
> the matter informally are exhausted, and still

> not to the mutual agreement of all involved,
> the matter can then be formally grieved to the
> Warden/Director's office.
>
> A formal grievance shall be filed only using
> grievance form # 1.20.09 #2 (copy included in
> the handbook) and available from your housing
> unit officer.  The grievance form must be
> filled out completely with all information
> requested supplied.  Incomplete forms shall be
> denied[.  A]n inmate may not submit more than
> one grievance on the same issue within a 15
> day period.

(Warden Def. Mot., Exh. D).  During his deposition, Shaver

acknowledged his familiarity with, and previous employment of,

the grievance process.  Based on representations and submissions

made by Warden Defendants, Shaver filed over 100 Inmate Request

Forms and approximately nine grievance forms, none of which

involved the issues raised in this suit.

A review of the records submitted by Warden Defendants

suggests that Shaver did not exhaust his administrative remedies

with respect to those facts or circumstances presented as the

grounds for his current claims.  Nowhere in his multitude of

inmate request and grievance forms does Shaver mention the ACJF's

inmate overcrowding, poor sanitation and ventilation, or flawed

structural design.  In further support of the apparent fact that

Shaver did not exhaust all of his administrative remedies, Shaver

admitted during his deposition that he did not know if he ever

filed a grievance regarding prison overcrowding.  (Warden Def.

Mot., Exh. E, at 78).  Thus, despite Shaver's knowledge and use

14

of the administrative remedies procedure, he seemingly did not complain of or grieve over many of the specific allegations he asserts in this matter.

The only exception to this conclusion is portions of Shaver's deposition testimony wherein he insists that he exhausted administrative remedies regarding his contraction of TB and MSRA. Shaver testified that he had filed a grievance concerning TB and MSRA. (Warden Def. Mot., Exh. E, at 16, 25-27, 78-80). Based on his testimony, however, it appears that his supposed grievance related to the lack of medical treatment he received for his diseases and not the alleged causes of those diseases, such as unsanitary conditions and structural flaws.[8] Other than his testimony, Shaver proffers nothing to evince his compliance with the administrative remedies procedure or to elucidate the scope and detail of his grievance.

Moreover, assuming *arguendo* that Shaver fully exhausted his administrative remedies, Warden Defendants still would be entitled to summary judgment based on this record. Shaver simply adduces no evidence to engender a genuine issue of material fact

---

[8] For example, Shaver testified that a couple of grievance forms were missing from Defendants' records. Among the absent forms, Shaver recalled: "There's one pertaining to that seven millimeter thing, that I wrote up about that thing, and [Nurse Davenport] throwing me out of the office." (Warden Def. Mot., Exh. E, at 40). Asked to clarify what he addressed in his missing grievance form, Shaver noted: "The seven millimeters and Luanne throwing me out of the nurse's office." (Id. at 41-42).

or to carry his burden on his claims against Warden Defendants.

First, Warden Defendants cannot be held liable on a theory of *respondeat superior*.  See Rode, 845 F.2d at 1207.  Yet Shaver seems to predicate his claims against Warden Defendants on the assumption that they were in charge of the ACJF and managed the facility's sanitation, cleanliness, and organization.  Certainly, as wardens, Merline and Thomas governed the ACJF's operation; however, nothing in the record shows that they had personal knowledge or involvement in the actual maintenance or structure of the facility.  Nor does any evidence point to a possibly unconstitutional policy or custom that they enacted, promulgated, approved, endorsed, or otherwise perpetuated.

Second, and fatal to Shaver's claims regardless of Warden Defendants' potential liability, the record is devoid of any evidence, other than Shaver's own bald assertions and inferences, to support his claims that the ACJF's congestion, unsanitary conditions, or structural design constitute unreasonable risks to an inmate's health and safety in violation of the United States Constitution and caused Shaver's infections -- let alone that Warden Defendants were aware of those circumstances and risks.

To establish a claim for unconstitutional conditions of confinement, the plaintiff must show that, objectively, the deprivation was sufficiently serious, and that, subjectively, prison officials acted or failed to act with deliberate

16

indifference.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).
With respect to the objective element, conditions of confinement
are unconstitutional only when they "deprive inmates of the
minimal civilized measure of life's necessities."  Rhodes v.
Chapman, 452 U.S. 337, 347 (1981).  Accordingly, an
unconstitutional deprivation arises where conditions pose "a
substantial risk of serious harm" to the inmate.  Farmer, 511
U.S. at 834.  Subjectively speaking, "in determining whether a
prison official has shown deliberate indifference to inmate
health or safety, we look to what a prison official actually knew
rather than to what a reasonable official in his or her position
should have known."  Serafin v. City of Johnstown, 53 F. App'x
211, 214 (3d Cir. 2002).  "Thus, in order to survive summary
judgment on a deliberate indifference claim, a plaintiff must
present sufficient evidence to support the inference that the
defendants 'knowingly and unreasonably disregarded an objectively
intolerable risk of harm.'"  Id. (quoting Beers-Capitol v.
Whetzel, 256 F.3d 120, 131 (3d Cir. 2001)).  The Third Circuit
has recognized this burden as "a high hurdle."  Id.

    Again, Shaver completely fails to adduce any evidence to
support his claims against Warden Defendants.  To plausibly
demonstrate that a facility's population, sanitation, or
structural design caused or contributed to the contraction or
spread of disease, a claimant must present some evidence more

17

than mere speculation or conjecture.  Without an expert witness
or report or some other credible evidence, a jury cannot
reasonably conclude that an inmate contracted or suffers from TB
or MSRA merely because that inmate is incarcerated in a prison
with many other inmates and the prison may not satisfy some
amorphous, undefined standard of health and cleanliness.  To
successfully prosecute his case, Shaver has a responsibility and
an obligation to furnish evidence that can suggest not only the
causal connection between overcrowding, unsanitary conditions,
and design flaws with the proliferation and transference of
disease, but that the conditions and structure of the ACJF itself
suffers from those problems.  Shaver has not sufficiently carried
any of that burden.  See, e.g., Nickles v. Taylor, 2010 U.S.
Dist. LEXIS 47887 (D.N.J. May 14, 2010) (granting summary
judgment against plaintiff-inmate's claims because plaintiff
failed to provide sufficient evidence to demonstrate
unconstitutional conditions of confinement, despite allegations
of unsanitary conditions, overcrowding, sleeping on a cell floor,
spoiled food, fire hazards, and lack of medical treatment).

     In other words, apart from Shaver's suppositions, the record
is silent as to whether the ACJF is dangerously overcrowded,
unsanitary, or structurally flawed, and whether any of those
conditions caused, or could have caused, his purported

infections.[9]  Shaver's allegations, short on description and
detail, cannot be established or sustained in a vacuum, and
necessitate some affirmative evidence other than mere pleadings
or conclusions to support them.  See Heffron v. Adamar of N.J.,
Inc., 270 F. Supp. 2d 562, 574-75 (D.N.J. 2003) (explaining that
"to defeat a properly supported motion for summary judgment, a
plaintiff cannot simply rely on 'vague', 'self-serving'
statements which are 'unsupported by specific facts in the
record,'" but rather "'must point to concrete evidence in the
record which supports each essential element' of a claim on which
he will bear the burden of proof at trial" (citation omitted));
see also Nickles, 2010 U.S. Dist. LEXIS 47887, at *9
("Plaintiff's conclusory assertions regarding the conditions of
his confinement at [the prison] do not establish that Plaintiff
lacked 'the minimal civilized measure of life's necessities.'").
Similarly, Shaver has not shown that Warden Defendants were

---

[9] In fact, Warden Defendants submit certifications from
Joseph Bondiskey, the current warden of the ACJF and the former
captain of the ACJF's Operations Unit.  In his certifications,
Bondiskey attests, inter alia, that (1) inmates are responsible
for cleaning much of the correctional facility, including their
own cells, and cleaning, mopping, and sweeping occurs daily; (2)
ACJF staff members conduct daily sanitation inspections and
weekly facility cleanliness inspections; (3) prison officials
have taken and are taking several measures to alleviate inmate
overcrowding and the problems associated with it; and (4) the
facility's vents are cleaned on a monthly basis by inmates under
the supervision of a ACJF staff member.  (Warden Def. Mot., Exhs.
H, I, and J).  Whatever the import of those representations, they
serve to further highlight the fact that Shaver has not proffered
any evidence sufficient to advance his claims.

actually aware of or acted in deliberate indifference to a significant threat to inmate health and safety or to a deprivation of inmates' rights.  Rather, Shaver presupposes Warden Defendants' involvement and ill will absent any tangible evidence.

Therefore, for the reasons stated above, Warden Defendants' Motion for Summary Judgment is granted.[10]

**IV.   CONCLUSION**

For the foregoing reasons, Healthcare Defendants' Motion for Summary Judgment is granted.  Further, Warden Defendants' Motion for Summary Judgment is granted.  An Order consistent with this Opinion will be entered.

Dated: September 2, 2011             /s/ NOEL L. HILLMAN
At Camden, New Jersey        NOEL L. HILLMAN, U.S.D.J.

---

[10] Given the disposition of Shaver's claims against Warden Defendants, the Court need not address Warden Defendants' other arguments at this time.

20